CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 23, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TEHGRAIN JAMAL JONES, | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-00224 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| RICK WHITE, *et al.*, | ) | By: Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Tehgrain Jamal Jones, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Rick White, C. King, J.R. Massengill, and Leah Holbrook.[1] Jones claims that the defendants acted with deliberate indifference to his health or safety in violation of the Eighth Amendment. *See* Am. Compl. 4–7, ECF No. 1. He also asserts claims of retaliation in violation of the First Amendment *Id.* at 4–5. White, King, and Massengill (collectively, the "correctional defendants") have moved for summary judgment on the basis that Jones failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See* Correctional Defs.' Mem. Supp. Summ. J. 11–15, ECF No. 36. Holbrook has moved for summary judgment on exhaustion grounds and on the merits of the claims asserted against her. *See* Holbrook's Mem. Supp. Summ. J. 13–20, ECF No. 38. In response to the defendants' motions, Jones has filed his own motion for summary judgment. For the reasons set forth below, the defendants' motions for summary judgment, ECF Nos. 35 and 37, are GRANTED, and Jones's motion for summary judgment, ECF No. 41, is DENIED.[2]

---

[1] At the time of the events in question, Leah Holbrook's last name was Jessee. The court will use her current last name throughout this opinion.

[2] The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 34.

I. Background

A.      Summary of Allegations and Claims

Jones is incarcerated at Red Onion State Prison ("Red Onion"), and his claims stem from events that allegedly occurred there. *See* Am. Compl. 1–7. During the period at issue, White was the Warden of Red Onion, King and Massengill were correctional officers at the prison, and Holbrook worked at the prison as a nurse practitioner. *Id.*

According to the verified amended complaint, Massengill moved Jones from general population to the restorative housing unit ("RHU") on September 17, 2021. *Id.* at 4. Jones claims that he was placed in the more restrictive unit in retaliation for refusing to withdraw a grievance. *Id.* After moving Jones to the RHU, Massengill confiscated an inhaler and other property. *Id.* Jones claims that he regularly used the inhaler for asthma and that Massengill refused to return it. *Id.* Jones further alleges that Massengill instructed "medical provider Shepard" not to issue him an inhaler after he began having difficulty breathing. *Id.*

With respect to White and King, Jones alleges that he informed both defendants that he was "dealing with respiratory complications" and that he was being denied an inhaler. *Id.* at 5. He asserts that White and King "refus[ed] to take [his] asthma attack serious[ly]," "interfered with [his] ability to access medical personnel," and gave him "outdated complaint form[s] that are no longer accepted by the institution." *Id.* at 6. Jones further alleges that White did not help him despite promising to do so and that King refused to provide assistance until Jones "stopped writing complaints on [King] and the administration." *Id.* at 5. Jones also asserts that the prison's ventilation system has mold and mildew in it, and that it has not been cleaned in three years. *Id.* at 7. He alleges that he has made numerous complaints about the ventilation system and its effects on his health and that White has refused to have it cleaned. *Id.*

With respect to Holbrook, Jones alleges that he had difficulty breathing after contracting COVID-19 in early 2022 and that Holbrook refused to issue him an inhaler to keep in his cell. *Id.* at 4. Jones alleges that Holbrook indicated that "she would not give him one until he was dying" and that she refused to issue him an inhaler even after he experienced an asthma attack. *Id.* Jones claims that Holbrook exhibited deliberate indifference to his serious medical needs by "requiring [that] he have an asthma attack and report to the infirmary for treatment rather than giv[ing] him a rescue inhaler to keep in his cell." *Id.* at 5. Jones also claims that Holbrook acted with deliberate indifference to his serious medical needs by removing him from chronic care. *Id.* He further asserts that he verbally complained to Holbrook that mold and mildew in the ventilation system "triggers his asthma" and that she told him "on at least one occasion that he would die" at Red Onion. *Id.* at 7.

B.      Evidence Relevant to Exhaustion

1.      The Inmate Grievance Procedure

The Virginia Department of Corrections ("VDOC") has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure ("OP") 866.1. Vilbrandt Decl. ¶ 4, ECF Nos. 36-1 & 38-1.[3] Inmates are advised of the grievance procedure when they arrive at a VDOC facility. *Id.* ¶ 5. Grievable issues include conditions of care, retaliation against an inmate for using the grievance procedure, and other actions of staff that affect an inmate personally. OP 866.1 § III(B)(1) (eff. Jan. 1, 2021), Vilbrandt Decl. Encl. A, ECF Nos. 36-1 & 38-2.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally. If a verbal complaint is not resolved to the satisfaction of an inmate, the inmate may submit an

---

[3] The correctional defendants and Holbrook submitted the same declaration by Institutional Ombudsman C. Vilbrandt in support of their respective motions for summary judgment.

informal written complaint to the appropriate department head. OP 866.1 § I(D)(2). The written complaint form includes spaces for an inmate to specifically identify the "Individuals Involved in Incident," the "Date/Time of Incident," and the issue for which the complaint is being filed. *See*, *e.g.*, Vilbrandt Decl. Encl. C, ECF Nos. 36-1 & 38-4. The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the designated staff member then has 15 days to provide a response. OP 866.1 § I(D)(2). If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. *Id.* § I(D)(4).

Regular grievances generally must be submitted within 30 days from the date of the incident or the discovery of the incident. *Id.* § III(B)(5). The regular grievance form includes spaces for an inmate to identify the "Individuals Involved in Incident," the "Date/Time of Incident," and the "Results of the Informal Complaint Process." *See, e.g.*, Vilbrandt Decl. Encl. D, ECF Nos. 36-1 & 38-5. The form also includes spaces for an inmate to provide a detailed explanation of the issue and a suggested remedy. *Id.* When filing a regular grievance, an inmate must attach the written complaint that was submitted first, along with relevant supporting documents. OP 866.1 § III(B)(6). Such documents include, for example, a "Notification of Confiscation of Property." *Id.*

Following the receipt of a regular grievance, prison officials have two days to accept or reject it. *Id.* § I(D)(5). If a regular grievance satisfies the intake criteria, "staff must accept the grievance and log it into VACORIS using the received date." *Id.* § III(C)(4). If the grievance does not meet the intake criteria, prison officials must return it to the inmate with an explanation for its rejection. *Id.* § III(C)(5). If an inmate disagrees with an intake decision, the inmate may appeal the decision to the Regional Ombudsman within five days. *Id.* § III(C)(6).

When a regular grievance is accepted during the intake process, the "Facility Unit Head" or "Assistant Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. *Id.* § III(F)(1)–(2). If an inmate is dissatisfied with the determination at Level I, the inmate may appeal the determination to Level II. The inmate "must submit their appeal within five days of receiving their response to the staff member designated [in the Level I response]." *Id.* § IV(B)(2). The designated respondent may not consider any issue raised on appeal that was not included in the regular grievance. *Id.* § IV(A)(1). "Appeals not submitted in accordance with [OP 866.1] are returned to the offender with specific reasons for the return." *Id.* § IV(A)(3).

"For most issues, including the ones raised in this lawsuit, Level II is the final level of review." Vilbrandt Decl. ¶ 24. OP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief and that "[t]he exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(A)–(B). "Once the offender has met the exhaustion requirement, the appeal respondent must notify the offender that all requirements have been exhausted." *Id.* § V(C).

2.      Applicable Grievance Records

On September 21, 2021, the grievance department received two written complaints from Jones. In one complaint, logged as ROSP-21-INF-01733, Jones alleged that Massengill had asked him to withdraw a grievance regarding a television that had been broken by another officer. Vilbrandt Decl. Encl. B, ECF Nos. 36-1 and 38-3. Jones asserted that he had refused to withdraw the grievance and that officers had retaliated against him by withholding all of his property and refusing to return his inhaler. *Id.* The complaint was assigned to the Chief of

Housing and Programs (CHAP), and CHAP D. Turner responded to the complaint on October 5, 2021. *Id.* In the other written complaint, logged as ROSP-21-INF-01732, Jones alleged that Massengill and other officers had left him in an empty cell and confiscated his personal property, and that certain items were missing when his property was returned to him. Vilbrandt Decl. Encl. C, ECF Nos. 36-1 & 38-4. In a response dated October 25, 2021, Lt. J. Shepard noted that Jones's property had been "inventoried according to policy [and] procedure." *Id.*

On October 6, 2021, Jones signed a regular grievance alleging that Massengill and other officers had taken his property on September 17, 2021, and that Massengill had falsely reported that Jones had refused his property. Compl. Ex. 8, ECF No. 1-1, at 11–12. The following day, Institutional Ombudsman C. Meade rejected the grievance at intake on the basis that it included insufficient information. *Id.* Meade instructed Jones to "provide a property inventory sheet." *Id.*

On October 29, 2021, Jones signed another regular grievance alleging that Massengill and other officers had left him in an empty cell and taken his personal property, including an asthma pump, and that he was being retaliated against for refusing to withdraw a grievance. Compl. Ex. 9, ECF No. 1-1, at 13. The grievance form used by Jones had a revision date of January 14, 2013. The grievance department returned the form to Jones with a notation advising him to "resubmit on attached updated form." *Id.*

Jones signed an updated grievance form that same day. Vilbrandt Decl. Encl. D, ECF Nos. 36-1 & 38-5. He resubmitted the updated grievance form, along with a copy of the written complaint designated as ROSP-21-INF-01732. *Id.* Jones asserted that Massengill and other officers had confiscated his personal property and that certain items had not been returned to him. *Id.* Jones requested that "all of [his] property and commissary [be] replaced." *Id.*

On November 8, 2021, Meade rejected the regular grievance at intake on the basis that Jones had provided insufficient information to support the grievance. *Id.* She instructed him to provide the "property inventory sheet with missing items listed" within five days in order for the grievance to be processed. *Id.* Jones appealed the intake decision to the Regional Ombudsman, and the decision was upheld on November 17, 2021. *Id.*

On January 30, 2022, Jones signed a written complaint alleging that he had asthma and that medical staff at Red Onion had refused to prescribe an inhaler. Vilbrandt Decl. Encl. H, ECF Nos. 36-1 and 38-9. He further asserted that correctional officers had taken the inhaler that had been issued to him at Sussex I State Prison and that medical staff had informed him that "they would not give [him] an asthma pump unless [he had] an asthma attack." *Id.* On February 16, 2022, Registered Nurse J. Bledsoe provided the following response:

> You have not been ordered a rescue inhaler since 07-2020. It was only to be used if you had an asthma attack. If you have [an] asthma attack, please notify medical and you will be treated. If you have asthma, it would require more frequent inhaler use than every 2 years, per provider review.

*Id.*

On March 1, 2022, Jones signed a regular grievance asserting that he had severe breathing problems and that the medical staff had refused to issue him an inhaler. Compl. Ex. 7, ECF No. 1-1, at 9. The grievance form used by Jones had a revision date of January 14, 2013. The grievance department returned the form to Jones with a notation advising him to "resubmit on attached updated form." *Id.*

On March 2, 2022, Jones signed an updated grievance form asserting that the medical staff had refused to issue him an inhaler. Vilbrant Decl. Encl. I, ECF Nos. 36-1 & 38-10. He alleged that he had "severe breathing problems" and that he needed to use an inhaler "daily to

7

help with [his] breathing." *Id.* He asked that he receive an inhaler as soon as possible. *Id.* On March 10, 2022, Institutional Ombudsman C. Meade rejected the regular grievance at intake on the basis that it was a request for services. *Id.* Meade noted that medical staff had advised that an inhaler had not been issued to Jones and that he should contact the medical department if he experienced an asthma attack. *Id.*

On November 15, 2022, Jones signed a written complaint alleging that the showers and walls in his housing unit were covered in black mold. Vilbrandt Decl. Encl. E, ECF Nos. 36-1 & 38-6. The complaint was logged as ROSP-22-INF-03053. *Id.* After receiving a response to the complaint, Jones submitted a regular grievance complaining of mold in the showers, on the walls, and in the ventilation system. Vilbrandt Decl. Encl. F, ECF Nos. 36-1 & 38-7. Warden White responded to the grievance on December 3, 2022, and determined that it was unfounded. *Id.*

Jones attempted to appeal White's decision, and the Level I response was stamped received by the Western Region Ombudsman Service Unit on December 14, 2022. Compl. Ex. 10, ECF No. 1-1, at 15. In a memorandum dated that same day, Regional Ombudsman C.L. Parr noted that Jones had "sent only the Level I response." Vilbrandt Decl. Encl. G, ECF Nos. 36-1 & 38-8. Parr advised Jones that an appeal from a Level I decision must include "*the original grievance form with the Level I response and [the] reasons for appeal* along with any informal materials and supporting documents." *Id.* (emphasis in original). Parr directed Jones to resubmit the appeal package within five calendar days. *Id.*

Jones subsequently resubmitted the Level I response to the Western Region Ombudsman Service Unit, along with a copy of the informal complaint designated as ROSP-22-INF-03053, and the documents were stamped received on December 20, 2022. Compl. Exs. 10 & 12, ECF

No. 1-1, at 15, 17. The documents were returned to Jones by Regional Ombudsman R. Bivens. Vilbrandt Decl. Encl. G. In a memorandum dated January 4, 2023, Bivens provided the following explanation: "Mr. Jones, you have failed to submit all necessary documents to have this grievance reviewed at Level II. Your complaint is noted. I am returning your paperwork your grievance has expired." *Id.* Bivens also checked a box indicating that the appeal "exceeded the 5 calendar day time limit" and that no further response would be provided. *Id.*

On February 1, 2023, Jones filed a written complaint alleging that he was "a chronic care inmate dealing with complications of long Covid" and that the "medical administration [had] refused to issue [him] an inhaler even though [his] medical file indicates and states that [he is] asthmatic." Vilbrandt Decl. Encl. J, ECF Nos. 36-1 & 38-11. He further asserted that he had gone over a year without an inhaler. *Id.* On February 17, 2023, Registered Nurse D. Trent provided the following response:

> Greetings Inmate Jones. You were discontinued from chronic care on 10/27/22 by your provider due to no longer requiring because you were reportedly healthy. Since you[r] discharge from [chronic care] you have met with NP [Holbrook] twice and Dr. Fox one time on 1/13/23. No respiratory problems were noted by assessment or reported by you. You have also been seen by sick call nurse 2 [times] since release from [chronic care]. No report of respiratory problems for each of these assessments. If you have developed new symptoms, please submit a nursing sick call request.

*Id.*

Jones subsequently submitted a regular grievance that included similar allegations and requested that he be issued an inhaler. Vilbrandt Decl. Encl. L, ECF Nos. 36-1 & 38-13. On February 24, 2023, the grievance was rejected at intake on the basis that it was a request for services. *Id.* Institutional Ombudsman D. Dotson noted that Jones had been assessed and

9

removed from chronic care, and that he should place a sick call request if he had new symptoms. *Id.*

C.      Medical Records and Other Evidence Pertaining to Respiratory Issues

Prior to being transferred to Red Onion in 2019, Jones was prescribed an Xopenex inhaler for asthma. *See* SA-VDOC000120, ECF No. 41-1, at 31.[4] Nurse Practitioner Deborah Ball renewed the inhaler prescription for 180 days in October 2019. SA-VDOC000140, ECF No. 41-1, at 33. The prescription was renewed again in April 2020. SA-VDOC000026, ECF No. 38-15, at 10. Jones's medical records indicate that the inhaler prescription was last renewed in June 2020, after he had been temporarily transferred to Sussex I State Prison. SA-VDOC000030–000033, ECF No. 38-15, at 14–17; *see also* Holbrook Decl. Ex. D, ECF No. 38-16, at 9.

On January 19, 2022, Holbrook saw Jones for complaints of vomiting, congestion, and headaches. Holbrook Decl. ¶ 6, ECF No. 38-14 (citing SA-VDOC000076, ECF No. 28-15, at 62). Holbrook noted that Jones's lungs sounded coarse but that he was not wheezing or exhibiting shortness of breath. *Id.* A rapid COVID-19 test was conducted, which returned a negative result. *Id.* Holbrook ordered a chest x-ray and prescribed Chlor-Trimeton ("CTM") and Mucinex to treat Jones's flu and cold symptoms, as well as an antibiotic. *Id.* Because his blood pressure was elevated, Holbrook also spoke with Jones about the risks of uncontrolled hypertension and the need to decrease his sodium intake. *Id.* She instructed him to return for a follow-up appointment in four weeks or as needed. *Id.*

---

[4] When citing to the VDOC medical records available at ECF Nos. 38-15 and 41-1, the court will use the Bates numbering found in the lower-right corner of the documents and the pagination generated by the court's CM/ECF system.

Jones took another COVID-19 test on January 24, 2022, after an inmate in his housing unit tested positive for the virus. Holbrook Decl. ¶ 7 (citing SA-VDOC000358, ECF No. 38-15, at 147). The second test produced a positive result. *Id.*

On January 28, 2022, Jones underwent the chest x-ray that Holbrook had ordered. Holbrook Decl. ¶ 8 (citing SA-VDOC0000339, ECF No. 38-15, at 138). The x-ray revealed no abnormalities. *Id.*

On February 24, 2022, Jones returned to Holbrook for a follow-up appointment. Holbrook Decl. ¶ 9 (citing SA-VDOC000079, ECF No. 38-15, at 63). At that time, Jones complained of a continuing cough with mucus production. *Id.* After conducting a physical examination, Holbrook noted that Jones's lungs were clear without rails or rhonchi but that his blood pressure continued to be elevated. *Id.* She prescribed Claritin for his postnasal drip and HCTZ for hypertension. *Id.* She also ordered that Jones be added to the chronic care list for blood pressure monitoring and that he return for a follow-up appointment in 30 days. *Id.*

On March 28, 2022, Jones presented to the medical department for blood work. Holbrook Decl. ¶ 11 (citing SA-VDOC000080, ECF No. 38-15, at 64). The treatment note indicates that Jones voiced no complaints at that time. *Id.*

On May 19, 2022, Holbrook renewed Jones's prescription for HCTZ. Holbrook Decl. ¶ 12 (citing SA-VDOC000081, ECF No. 38-15, at 65). As of October 27, 2022, Jones's hypertension had resolved. Holbrook Decl. ¶ 13 (citing SA-VDOC000360, ECF No. 38-15, at 149). Consequently, Holbrook discontinued the HCTZ prescription and discharged him from chronic care. *Id.*

During the intervening period, Jones appeared at sick call with complaints of right toe pain. SA-VDOC000082–83, ECF No. 38-15, at 66–67. On each occasion, the nurse noted that

his respirations were even and unlabored, and that he did not exhibit any signs of acute distress. *Id.*

Jones saw Holbrook again on November 10, 2022, for complaints of a right shoulder injury. Holbrook Decl. ¶ 14 (citing SA-VDOC000085, ECF No. 38-15, at 69). At that time, Jones showed no signs of asthma or other respiratory problems that would require treatment. *Id.* He was transported to the emergency room at a local hospital for his shoulder complaints. SA-VDOC000085, ECF No. 38-15, at 69. The hospital records indicate that his lung sounds were clear bilaterally, that a review of systems was "[n]egative for cough or shortness of breath," and that his pulmonary effort was normal on examination. SA-VDOC0000363–365, ECF No. 38-15, at 152–154.

On December 6, 2022, Jones presented at sick call with complaints of right shoulder pain. SA-VDOC000086, ECF No. 38-15, at 70.  On examination, his respirations were found to be "even [and] unlabored." *Id.* Jones continued to complain of shoulder pain on December 13, 2022, when he was examined by Holbrook.  Holbrook Decl. ¶ 15 (citing SA-VDOC000086, ECF No. 38-15, at 71). At that time, Jones "showed no signs or symptoms of asthma or other respiratory problems that would require treatment." *Id.*

The VDOC medical records indicate that Jones's respirations were even and unlabored on December 21, 2022, when he was examined by a nurse. SA-VDOC [number illegible], ECF No. 38-15, at 159. Nurses recorded similar observations on several occasions between January 2, 2023, and January 6, 2023. SA-VDOC [numbers illegible], ECF No. 38-15, at 73–76. Likewise, on April 2, 2023, when Jones was brought to the medical department with complaints of neck pain, a nurse noted that his respirations were even and unlabored. SA-VDOC000094, ECF No. 38-15, at 78.

In his verified amended complaint, Jones alleges that he requested an inhaler after contracting COVID-19 and that Holbrook refused to issue him one. Am. Compl. 4. Jones alleges that Holbrook also refused to issue him an inhaler after he experienced an asthma attack on an unidentified date. *Id.* Holbrook, for her part, maintains that the examination findings during the relevant time period did not support the need for an inhaler. *See* Holbrook Decl. ¶ 10 ("Because Mr. Jones had no evidence of respiratory problems on clinical exam and his lungs were clear, there was no indication for a prescription for an asthma inhaler."). Holbrook also asserts that Jones has been advised to place a sick call request if he develops any symptoms and that Jones has not submitted a request for medical treatment for breathing issues or other symptoms of asthma since February 2022. *Id.* ¶ 17.

## II.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). In considering each motion, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing

that motion." *Id.* (internal quotation marks omitted). The court may not "weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "However, it is well-established that a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the [factual] allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Nonetheless, conclusory allegations in a verified complaint are insufficient to survive summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

### III.  Discussion

The correctional defendants and defendant Holbrook have moved for summary judgment on the basis that Jones failed to exhaust his administrative remedies as required by the PLRA. Holbrook also argues that she is entitled to summary judgment on the merits of the claims asserted against her. In response, Jones has filed his own motion in which he argues that he

exhausted his administrative remedies prior to filing suit and that he is entitled to summary judgment on the merits of his claims against the defendants.[5]

A.    Exhaustion Analysis

The court will first address the exhaustion issues raised by the parties. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." *Id.* (internal quotation marks omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

---

[5] Jones's motion for summary judgment also includes a number of entirely new allegations. *See* Pl.'s Mot. Summ. J. at 6 (alleging that he suffered an asthma attack in October 2023 after being exposed to mace and that unidentified medical staff sent him back to his cell without providing any treatment); *id.* at 7 (alleging that he is being denied payments for attending GED classes as a form of retaliation); *id.* (alleging that Massengill "verbally assault[ed]" him during the course of an "unauthorized" cell search conducted on September 23, 2023); *Id.* at 8 (alleging that he was moved to the RHU in late December 2022 after complaining about the denial of adequate recreation time). "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). The rule is no different for *pro se* plaintiffs. *See Chaney v. United States*, 658 F. App'x 984, 988 (11th Cir. 2016) (emphasizing that a *pro se* litigant "must follow procedural rules" and therefore "cannot raise new claims in his brief opposing summary judgment"); *Sarno v. Wilson*, No. 1:17-cv-00953, 2018 WL 3638079, at *3 n.2 (E.D. Va. July 27, 2018) (noting that "it is well accepted that a plaintiff, even one proceeding *pro se*, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment"). Accordingly, the court declines to consider the new allegations presented in Jones's motion for summary judgment. If Jones wishes to pursue additional claims, he must file a new complaint in a separate action.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." *Woodford*, 548 U.S. at 88, 90. Consequently, an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement. *Id.* at 83–84.

The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." *Jones*, 549 U.S. at 218. As a result, "[t]he level of detail necessary in a grievance to comply with the grievance procedure will vary from system to system and claim to claim." *Id.* "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *see also Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017).

"The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016). "Available" means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." *Id.* at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id.* at 643. The Supreme Court has identified certain circumstances in which a grievance procedure is not "capable of use" in this sense, such

as when correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." *Id.* at 643–45; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bears the burden of establishing that an inmate failed to exhaust his administrative remedies. *Jones*, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *see also Graham v. Gentry*, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

1.     Failure to Exhaust

The court will first address whether the defendants have met their burden of establishing that Jones failed to exhaust his administrative remedies. As previously explained, the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. This "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (internal quotation marks omitted).

a.     Claims against Massengill

Jones claims that Massengill moved him to the RHU and confiscated his inhaler on September 17, 2021, because he would not withdraw a grievance. Jones also claims that

17

Massengill refused to return the inhaler and instructed a medical provider not to issue him one, even after Jones had trouble breathing.

Having carefully reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Jones properly exhausted his claims against Massengill. The record reflects that Jones filed two written complaints after Massengill moved him to the RHU on September 17, 2021, and that Jones attached one of those complaints (ROSP-21-INF-01732) to a regular grievance signed on October 29, 2021. Jones complained on all three forms that various items of personal property, including an asthma inhaler, had been taken from him and not returned. However, neither the complaints nor the regular grievance alleged that Massengill moved him to the RHU for refusing to withdraw a grievance, that he experienced breathing difficulties while housed in the RHU, or that Massengill told a medical provider not to issue him an inhaler. Moreover, the regular grievance signed on October 29, 2021, which sought the return or replacement of missing personal property and commissary items, was rejected at intake because it was not accompanied by all records necessary to investigate and address the underlying complaint. Although Jones was given the opportunity to resubmit the grievance and a specified property inventory sheet within five days, it is undisputed that he did not do so. Instead, Jones elected to appeal the intake decision, which was upheld by the Regional Ombudsman.

In his motion for summary judgment, Jones argues that he properly exhausted his administrative remedies by appealing the intake decision to the Regional Ombudsman. *See* Pl.'s Mot. Summ. J. 3 ("Plaintiff exhausted administrative remedies prior to filing suit . . . . Plaintiff appealed the regular grievance to the Regional Ombudsman, which is the final stage of the grievance procedure."). This argument is without merit. "OP 866.1 clearly explains that proper exhaustion requires the submission of a regular grievance within thirty days of the occurrence

18

that is both accepted at intake and then appealed to [the] highest level of review." *Hailey v. Clary*, No. 7:17-cv-00260, 2018 WL 2123623, at \*2 (W.D. Va. May 8, 2018). Merely appealing an intake decision "does not constitute valid exhaustion of remedies under OP 866.1." *Id.*; *see also Jackson v. Barksdale*, No. 7:17-cv-00031, 2017 WL 3446259, at \*3 (W.D. Va. Aug. 10, 2017) (explaining that "final intake decisions do not constitute exhaustion of administrative remedies"), *aff'd*, 707 F. App'x 786 (4th Cir. 2018). Instead, "an inmate must correct and resubmit the grievance, have it accepted, and then appeal it to the highest available level of review without satisfactory resolution of the issue." *Person v. Davis*, No. 7:20-cv-00146, 2021 WL 4429194, at \*4 (W.D. Va. Sept. 27, 2021). It is undisputed that Jones did not satisfy these requirements before filing suit against Massengill.

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Jones properly exhausted his claims against Massengill and that the correctional defendants have met their burden of proving that he failed to do so.

> b.    Claims against White and King

Jones claims that White and King refused to take his respiratory issues seriously, interfered with his ability to access medical personnel, and gave him outdated complaint forms that are no longer accepted by the prison. He also alleges that White did not help him despite promising to do so and that King refused to assist him until he stopped submitting written complaints. Additionally, Jones claims that mold and mildew in the prison's ventilation system triggered his asthma and that White refused to have the system cleaned during the three-year period in which Jones lived there prior to filing this action.

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Jones properly exhausted his claims against White or King. The correctional

defendants correctly note that none of the written complaints or regular grievances submitted by Jones alleged that White or King interfered with his ability to access medical personnel, provided outdated or incorrect forms, or failed or refused to assist him in obtaining treatment for asthma. Likewise, none of the complaints or grievances alleged that King would only assist Jones in obtaining medical treatment if he stopped submitting written complaints. Although Jones filed a written complaint (ROSP-22-INF-03053) and a regular grievance (ROSP-22-REG-000414) complaining about the presence of black mold, he failed to submit all of the documents necessary to have the grievance reviewed at Level II, even after being given the opportunity to resubmit the appeal. Jones was specifically advised that the appeal package must include the Level I response, along with the original grievance form, any informal materials, and supporting documents. Although the record reflects that Jones resubmitted the Level I response, he did not provide all of the other documents.[6] Consequently, the appeal was returned by the Regional Ombudsman without being considered by the Level II respondent. As a result, Jones did not properly exhaust his administrative remedies with respect to the mold issues raised in ROSP-22-REG-000414. *See Waddy v. Sandstrom*, No. 7:11-cv-00320, 2012 WL 2023519, at *4 (W.D. Va. June 5, 2012) (concluding that an inmate failed to satisfy the exhaustion requirement since he did not "resubmit the appeal *with* the grievance and the informal complaint," as he had been instructed to do).

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Jones properly exhausted his claims against White and King and that the correctional defendants have met their burden of proving that Jones failed to do so.

---

[6] Exhibits submitted by Jones indicate that the Regional Ombudsman received a copy of the initial informal complaint. *See* Compl. Ex. 12, ECF No. 1-1, at 17. However, there is no evidence that Jones submitted a copy of the regular grievance, as he was instructed to do.

       d.    Claims Against Holbrook

Jones asserts claims of inadequate medical treatment against Nurse Practitioner Holbrook. In particular, Jones claims that Holbrook acted with deliberate indifference to his serious medical needs by refusing to issue him an inhaler to keep in his cell, removing him from chronic care, and otherwise failing to adequately treat his alleged respiratory issues.

Holbrook has submitted unrefuted evidence that the grievance department "did not receive a written complaint . . . or grievance from Jones complaining that [Holbrook] removed him from chronic care." Vilbrandt Decl. ¶ 74. Although Jones submitted written complaints and grievances alleging that Holbrook and other members of the medical staff had refused to issue him an inhaler, none of the complaints or grievances in the record challenged Holbrook's decision to discharge him from chronic care. Consequently, the court concludes that no genuine issue of material facts exist as to whether Jones properly exhausted his administrative remedies with respect to this claim and that Holbrook has met her burden of proving that Jones failed to do so.

In March 2022, after being provided an updated grievance form, Jones submitted a regular grievance requesting the issuance of an inhaler. He asserted that he needed an inhaler for asthma and that the medical staff had refused to issue him one. In February 2023, Jones submitted another grievance requesting the issuance of an inhaler. He alleged that Holbrook and other members of the medical staff had refused to issue him an inhaler, that he had gone over a year without an inhaler, and that he had experienced an asthma attack. On both occasions, the regular grievance was rejected at intake because it was deemed to be a request for services, and Jones was advised to contact medical or place a sick call request if he had an asthma attack or experienced new symptoms. When an inmate seeks to receive medical care or other services, he

must "submit a proper request for services through the proper prison channels." *Prosha v. Coleman*, No. 3:22-cv-00183, 2023 WL 5673442, at *9 (E.D. Va. Sept. 1, 2023) (citing *Rountree v. Clarke*, No. 7:11-cv-00572, 2014 WL 4923964, at *6 (W.D. Va. Mar. 24, 2024), *report and recommendation adopted in part*, 2014 WL 4923163 (W.D. Va. Sept. 30, 2014). "Only then, if the request for services is denied, does the offender have the opportunity to pursue the claim through the informal complaint and regular grievance process." *Id.* (internal quotation marks and brackets omitted). Here, there is no evidence that Jones ever submitted a breathing-related sick call request or other written request for respiratory treatment before filing a written complaint and a regular grievance. Consequently, his grievances requesting the issuance of an inhaler were "not addressed on the merits as is required for proper exhaustion." *Id.*; *see also Woodford*, 548 U.S. at 90 (explaining that an inmate must use administrative remedies "*properly* (so that the agency addresses the issues on the merits)") (internal quotation marks omitted).

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Jones properly exhausted his administrative remedies with respect to his claims against Holbrook and that Holbrook has met her burden of proving that Jones failed to do so.

2.      Availability of Administrative Remedies

In his motion for summary judgment, Jones alternatively suggests that administrative remedies were unavailable to him. As explained above, the Supreme Court has identified several "kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 U.S. at 643. One situation is when prison officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." *Id.* at 643. Jones invokes that exception, asserting that he was "continuously given outdated regular grievances that the institution would not [accept] in an

effort to prevent him from exhausting his remedies." Pl.'s Mot. Summ. J. 4. The motion is accompanied by outdated grievance forms that were returned to Jones with instructions to "resubmit on attached updated form." Pl.'s Mot. Summ. J. Exs., ECF No. 41-1, at 42, 55.

The problem with Jones's argument is that there is undisputed evidence establishing that the continued circulation of outdated grievance forms did not actually prevent Jones from attempting to grieve the issues giving rise to this action. The United States Court of Appeals for the Fourth Circuit has explained that "a grievance process is rendered 'unavailable' under the PLRA only if an inmate actually is prevented from using it." *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021). If "an inmate is able to participate in a grievance process, notwithstanding alleged obstacles, then that process remains 'available' for purposes of the PLRA." *Id.*

Here, the record establishes that Jones was able to access the grievance process despite being given outdated grievance forms. Although the outdated grievance forms submitted by Jones were initially rejected at intake, it is undisputed that the Institutional Ombudsman gave Jones copies of the correct grievance form to resubmit for consideration. Indeed, the record reflects that Jones resubmitted his complaints on the correct grievance forms either on the same day or the day after he submitted the outdated forms. On this record, no reasonable factfinder could conclude that the provision of outdated forms "actually prevented" Jones from exhausting his administrative remedies with respect to the claims asserted in this action. *Id.*

In sum, there is no evidence from which a reasonable factfinder could conclude that Jones properly exhausted any of his claims or that the grievance procedure was unavailable to Jones through no fault of his own. Consequently, the defendants are entitled to summary judgment based on Jones's failure to exhaust his administrative remedies.

B.   Merits Analysis

Holbrook alternatively argues that even if Jones had exhausted his claims of inadequate medical treatment, they would fail on the merits. Having reviewed the record, the court agrees.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). An Eighth Amendment violation occurs when a prison official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.* (citations omitted); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.").

A claim of deliberate indifference has two components. *Jackson*, 775 F.3d at 178. The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

"The subjective component requires showing that the defendant had actual subjective knowledge of both the plaintiff's serious medical condition and the excessive risk posed by the official's action or inaction." *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (internal quotation marks and brackets omitted). "An official is deliberately indifferent to an inmate's

24

serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id*. Additionally, the Fourth Circuit "consistently" has found that mere disagreements between an inmate and a medical provider over the inmate's proper medical care "fall short of showing deliberate indifference." *Id.* at 178; *see also Phoenix*, 95 F.4th at 859 (noting that such disagreements "do not cut it"). Likewise, "in the Eighth Amendment context, questions of medical judgment are generally 'not subject to judicial review.'" *Griffin v. Mortier*, 837 F. App'x 166, 171 (4th Cir. 2020) (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)). To find a medical provider liable, "the treatment given must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hixson*, 1 F.4th at 303.

Applying these principles, the court concludes that Holbrook is entitled to summary judgment on the merits of the Eighth Amendment claims asserted against her. Even assuming that Jones can satisfy the objective component, no reasonable jury could find that Holbrook acted with deliberate indifference to any serious medical needs. The medical records establish that Holbrook ordered a chest x-ray and prescribed medications in January 2022 when Jones complained of congestion and ultimately tested positive for COVID-19. The chest x-ray revealed no abnormalities and Jones's lungs were found to be clear when he returned for a follow-up appointment the following month. Although Jones sought treatment for other medical issues over the course of the following year, including toe and shoulder pain, he did not place a sick call request for breathing issues or other symptoms of asthma, and there is no evidence that he

exhibited signs of respiratory distress or difficulty breathing at any of the examinations during that period. To the contrary, Holbrook and other medical providers consistently noted that Jones's respirations were even and unlabored, that his lungs were clear, and that he did not display any objective signs of acute distress. While Jones nonetheless contends that Holbrook should have prescribed him an inhaler after he requested one, his personal disagreement with Holbrook's medical judgment or treatment decisions is insufficient to establish deliberate indifference. *Jackson*, 775 F.3d at 178; *see also Blount v. Leslie*, No. 23-2837, 2024 WL 208144, at *2 (3d Cir. Jan. 19, 2024) (concluding that an inmate's disagreement with a nurse practitioner's decision to discontinue his asthma medications was insufficient to establish deliberate indifference, and noting that "even if [the nurse practitioner] erred in assessing [the inmate's] records or condition, there was no constitutional violation"); *Stephen v. Zulfacar*, No. 94-55655, 1995 WL 10836, at *1 (9th Cir. Jan. 11, 1995) (agreeing with the district court that an inmate had merely shown "a difference of opinion over the proper course of medical treatment" where the inmate alleged that the prison doctor "should have prescribed him an inhaler because an ear, nose and throat specialist . . . had prescribed an inhaler for [him] on a previous occasion"); *Barfell v. Weisse*, No. 1:13-cv-00854, 2015 WL 1401865, at *9 (E.D. Wis. Mar. 26, 2015) (concluding that an inmate's disagreement with the medical defendants' decision that an inhaler was not medically necessary failed to state a cognizable Eighth Amendment claim, and emphasizing that "[a] previous diagnosis does not require the medical defendants to treat [an inmate] in a particular manner").

Additionally, no reasonable jury could find that Holbrook exhibited deliberate indifference by removing Jones from the chronic care list. The record reflects that Holbrook added Jones to the chronic care list to monitor his blood pressure and that she removed him from

the list after his hypertension had been successfully treated with medication. Even if Holbrook was somehow negligent in determining that Jones no longer required chronic care visits, "mere negligence is not enough to show deliberate indifference." *Hixson*, 1 F.4th at 303.

Finally, the court concludes that the comments that Holbrook purportedly made during the course of examining Jones are not sufficient to establish that she acted with deliberate indifference to his serious medical needs. According to the verified amended complaint, Holbrook indicated that she would not issue him an inhaler "until he was dying," and she told him "on at least one occasion that he would die" at Red Onion after he complained to her about the ventilation system. Am. Compl. 4, 7. While these alleged comments, which Holbrook denies making, are callous and inappropriate, they are not alone sufficient to give rise to an Eighth Amendment claim. *See Hollyfield v. Hurst*, 796 F. App'x 817, 820 (5th Cir. 2019) ("Rude or insensitive behavior towards prisoners is disgraceful conduct, but it does not alone rise to the level of deliberate indifference . . . . Here, although Hurst may have made several rude and insensitive remarks, they do not illustrate deliberate indifference when Hollyfield was also receiving medical treatment."); *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("[I]t is not a violation of the Eighth Amendment for a prison physician to consult with a prisoner concerning a medical condition in an aloof or unfriendly way. Much more is required."); *Atkins v. Lofton*, 373 F. App'x 472, 473 n.1 (5th Cir. 2010) ("We do not suggest that we condone any rude or insensitive treatment Atkins may have received. However, rudeness or lack of compassion alone are insufficient to support a cause of action [under § 1983]."); *Beard v. Gusman*, No. 2:13-cv-06633, 2015 WL 422999, at *3 (E.D. La. Feb. 2, 2015) ("Although [the medical staff's] comments were clearly insensitive, being callous or rude in the context of

medical care does not an Eighth Amendment violation make.") (internal quotation marks omitted).

## IV.  Conclusion

For the reasons stated, the court concludes that all four defendants are entitled to summary judgment based on Jones's failure to exhaust his administrative remedies and that Holbrook is also entitled to summary judgment on the merits of the Eighth Amendment claims asserted against her. Accordingly, the defendants' motions for summary judgment, ECF Nos. 35 and 37, are GRANTED, and Jones's motion for summary judgment, ECF No. 41, is DENIED. An appropriate order will be entered.

Entered: September 23, 2024

Joel C. Hoppe
United States Magistrate Judge